**ORIGINAL**

**20 MAG  1237**

Approved: _JULIANA N. MURRAY_ _____
         JULIANA N. MURRAY
         Assistant United States Attorney

Before:  HONORABLE SARAH NETBURN
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - X
                                      :
UNITED STATES OF AMERICA              :       SEALED COMPLAINT
                                      :
     - v. -                           :       Violation of 21 U.S.C.
                                      :       § 846
JONATHAN BURGOS,                      :
   a/k/a "John John,"                 :       COUNTY OF OFFENSE:
TYRONE HOWARD,                        :       BRONX
   a/k/a "Ty,"                        :
BOBBY RAMOS, and                      :
ODALYS ROJAS,                         :
                                      :
        Defendants.                   :
- - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

     LEE ARROYO, being duly sworn, deposes and says that he is a
Detective with the New York City Police Department ("NYPD"), and
charges as follows:

### COUNT ONE

     1.   From at least in or about March 2019 up to and
including at least in or about September 2019, in the Southern
District of New York and elsewhere, JONATHAN BURGOS, a/k/a "John
John," TYRONE HOWARD, a/k/a "Ty," BOBBY RAMOS, and ODALYS ROJAS,
the defendants, and others known and unknown, intentionally and
knowingly did combine, conspire, confederate, and agree together
and with each other to violate the narcotics laws of the United
States.

     2.   It was a part and an object of the conspiracy that
JONATHAN BURGOS, a/k/a "John John," TYRONE HOWARD, a/k/a "Ty,"
BOBBY RAMOS, and ODALYS ROJAS, the defendants, and others known
and unknown, would and did distribute and possess with intent to

distribute a controlled substance, in violation of Title 21,
United States Code, Section 841(a)(1).

3.    The controlled substance that JONATHAN BURGOS, a/k/a
"John John," TYRONE HOWARD, a/k/a "Ty," BOBBY RAMOS, and ODALYS
ROJAS, the defendants, conspired to distribute and possess with
intent to distribute was mixtures and substances containing
detectable amounts of cocaine, in violation of Title 21, United
States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge
are, in part, as follows:

4.    I am a Detective with the NYPD. I have been personally
involved in the investigation of this matter. This Affidavit is
based upon my personal participation in the investigation, my
examination of reports and records, and my conversations with
other law enforcement agents and other individuals. Because this
Affidavit is being submitted for the limited purpose of
demonstrating probable cause, it does not include all the facts
that I have learned during the course of my investigation. Where
the contents of documents and the actions, statements, and
conversations of others are reported herein, they are reported
in substance and in part, except where otherwise indicated.

5.    As set forth in greater detail below, on or about
March 14, 2019, law enforcement responded to the scene of two
overdose deaths. Following the discovery of the overdose victims
("Victim-1" and "Victim-2") in an apartment on Lafayette Avenue
in the Bronx, New York, law enforcement initiated an
investigation into a group of individuals (the "Crew") selling
cocaine in the vicinity of a housing complex called the Clason
Point Houses, which is located in the Bronx, New York, between
Lafayette and Story Avenues and between Metcalf and Noble
Avenues (the "Complex"). During the investigation, undercover
law enforcement officers ("UCs") have purchased narcotics at or
outside the Complex directly from members of the Crew, including
JONATHAN BURGOS, a/k/a "John John," TYRONE HOWARD, a/k/a "Ty,"
BOBBY RAMOS, and ODALYS ROJAS, the defendants.

6.    Based on my participation in this investigation, I
have learned, among other things, the following:

a.    At approximately 2:03 p.m. on or about March 14,
2019, BOBBY RAMOS, the defendant, called 911 to report that he

2

had found his roommate (Victim-1) and his roommate's girlfriend (Victim-2) unresponsive inside their apartment, located in a building on Lafayette Avenue in the Bronx, New York.

      b.   Law enforcement officers who responded to the scene pronounced Victim-1 and Victim-2 dead on arrival of suspected drug overdoses.

      c.   RAMOS waived his *Miranda* rights and voluntarily spoke with law enforcement. RAMOS stated, in substance and in part, that he had purchased cocaine on or about March 13, 2019 (*i.e.*, the day before Victim-1 and Victim-2 overdosed) for himself and for others, including Victim-1.

      d.   On or about March 15, 2019, the City of New York Department of Health and Mental Hygiene issued death certificates for Victim-1 and Victim-2. Victim-1's death certificate cited the cause of death as acute intoxication by the combined effects of alcohol, cocaine, and fentanyl. Victim-2's death certificate cited the cause of death as acute intoxication by the combined effects of cocaine and fentanyl.

   7.   Based on my participation in this investigation and my conversations with an NYPD Detective (the "Detective"), who has spoken with three undercover officers ("UC-1," "UC-2," and "UC-3"), I have learned, among other things, the following:

      a.   On or about April 17, 2019, UC-1 approached ODALYS ROJAS, the defendant, and asked ROJAS to put UC-1 in contact with JONATHAN BURGOS, a/k/a "John John," the defendant, for the purpose of purchasing narcotics. ROJAS then place a phone call during which ROJAS stated, in substance and in part, that someone was looking to buy "two bags." Some minutes later, ROJAS received a call and asked UC-1 to wait. When ROJAS returned, he sold UC-1 approximately two glassine envelopes. The contents of the glassine envelopes later tested positive for the presence of cocaine.

      b.   Between on or about May 1, 2019 and on or about September 19, 2019, on approximately 11 occasions, UC-1 purchased a total of approximately 92 glassine envelopes from ROJAS. All the purchases occurred in the vicinity of the Complex. The contents of the glassine envelopes later tested positive for the presence of cocaine. In connection with these 11 purchases, ROJAS frequently referenced, spoke with, or met with BURGOS. For example, on or about May 29, 2019, ROJAS and BURGOS were observed and heard engaging in drug-related

- 3

conversation in the vicinity of the Complex. When ROJAS walked away from BURGOS, ROJAS walked to UC-1 and sold UC-1 approximately five glassine envelopes. ROJAS also provided UC-1 with a cellphone number for BURGOS and advised UC-1 to communicate with BURGOS exclusively via text messages.

c.   On or about September 25, 2019, UC-1 called ROJAS and ordered approximately $500 worth of cocaine. Later that day, UC-1 and ROJAS met near a gas station in the vicinity of the Complex. UC-1 handed ROJAS $500 and ROJAS left for a few minutes, before returning with approximately 20 glassine envelopes. ROJAS then told UC-1, in substance and in part, that "John John" had told ROJAS to go to one of John John's workers, Ty, to get the cocaine.  Based on my involvement in this investigation, I understand ROJAS to have been referring to BURGOS and TYRONE HOWARD, a/k/a "Ty," the defendant. The contents of the glassine envelopes later tested positive for the presence of cocaine.

d.   Between on or about July 25, 2019 and September 25, 2019, on approximately three occasions, UC-2 purchased a total of approximately 17 glassine envelopes from HOWARD. The purchases occurred in the vicinity of the Complex.  The contents of the glassine envelopes later tested positive for the presence of cocaine.

e.   On or about August 14, 2019, UC-3 purchased approximately two glassine envelopes from BOBBY RAMOS, the defendant. The purchase occurred in the vicinity of the Complex. The contents of the glassine envelopes later tested positive for the presence of cocaine.

f.   On or about September 13, 2019, UC-3 met with RAMOS in the vicinity of the Complex to purchase narcotics. During the meeting, RAMOS identified a white car ("Car-1") from which RAMOS stated he was going to retrieve the narcotics. RAMOS then left UC-3 and returned with approximately five glassine envelopes, which RAMOS sold to UC-3. The contents of the glassine envelopes later tested positive for the presence of cocaine. Based on my review of law enforcement databases, I have learned that Car-1 (*i.e.*, the car from which RAMOS retrieved the cocaine he sold to UC-3) was registered to BURGOS, and that law enforcement has surveilled BURGOS driving Car-1 in the vicinity of the Complex.

WHEREFORE, I respectfully request that warrants be issued for the arrests of JONATHAN BURGOS, TYRONE HOWARD, a/k/a "Ty,"

BOBBY RAMOS, and ODALYS ROJAS, the defendants, and that they be
imprisoned or bailed, as the case may be.

_____
Detective Lee Arroyo
New York City Police Department


Sworn to before me this
3rd day of February, 2020.

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

5