USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/25/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
UNITED STATES OF AMERICA            :
                                     :    20-CR-182 (VEC)
    -against-                      :
                                     :    OPINION & ORDER
JONATHAN BURGOS,                     :
                                     :
                             Defendant.    :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Defendant Jonathan Burgos was charged in a two-count indictment with violating the narcotics laws. *See* Superseding Indictment (S1), Dkt. 133. On October 15, 2020, Burgos moved to suppress evidence that the Government obtained incident to executing an arrest warrant and pursuant to a search warrant.[1] *See* Mem. of Law, Dkt. 89. The Court held oral argument on January 21, 2021, and conducted an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on May 6, 2021. *See* Oral Arg. Tr., Dkt. 149; *Franks* Hearing Tr., Dkt. 125. For the reasons discussed below, Defendant's motion to suppress is DENIED.[2]

## BACKGROUND

### I. The Investigation and the Warrants

The investigation of Burgos grew out of an investigation into two overdose deaths in the Bronx. On March 14, 2019, Bobby Ramos[3] called 911 after discovering that his roommate and

---

[1] Burgos also moved to suppress the fruits of a November 2019 warrant pertaining to historical cellphone location information and toll records for the month of March 2019. *See* Mem. of Law, Dkt. 89 at 2–4, 7–9. At oral argument, the Government informed the Court that it did not intend to use the information obtained pursuant to that warrant. Oral Arg. Tr., Dkt. 149 at 19–20, 21. Accordingly, on January 21, 2021, the Court denied Defendant's motion to suppress evidence obtained pursuant to that warrant as moot. Order, Dkt. 113 at 1.

[2] On May 14, 2021, the Court informed the parties that it had preliminarily determined that Defendant's motion to suppress would be denied and that a written opinion would follow. *See* Order, Dkt. 120 at 1. The trial in this case took place from August 23-25, 2021; Burgos was convicted on all counts.

[3] Bobby Ramos was indicted with Burgos, *see* Indictment, Dkt. 20; he has pled guilty, *see* Dkt. 80.

his roommate's girlfriend were unresponsive and apparently had overdosed on cocaine and fentanyl. *See* Compl., Dkt. 1 ¶¶ 5, 6(a), 6(d). Ramos told law enforcement that he had purchased the cocaine for himself and his roommate. *Id.* ¶ 6(c). Following a New York Police Department ("N.Y.P.D.") investigation, approximately eleven months after the drug overdoses, Detective Lee Arroyo signed a sworn Complaint seeking arrest warrants for Burgos and three others. *Id.* at p. 5.

With respect to Burgos, Det. Arroyo swore: (1) that on or about April 17, 2019, an undercover officer ("UC-1") asked Odalys Rojas[4] to put him in touch with "JONATHAN BURGOS, a/k/a 'John John,' the defendant, for the purpose of purchasing narcotics," *id.* ¶ 7(a); (2) that in connection with 11 undercover buys between May 1 and September 19, 2019, Rojas "frequently referenced, spoke with, or met with BURGOS," *id.* ¶ 7(b); (3) that on May 29, 2019, Rojas and Burgos "were observed and heard engaging in drug-related conversations," *id.*; (4) that Rojas provided UC-1 with a cellphone number for Burgos, *id.*; (5) that during a September 25, 2019, undercover buy, after selling cocaine to UC-1, Rojas told him that "John John" had told Rojas to get the cocaine from one of "John John's workers," *id.* ¶ 7(c); (6) that on September 13, 2019, Ramos told an undercover officer who was purchasing cocaine from him ("UC-3") that he would get the cocaine from a car ("Car-1"), *id.* ¶ 7(f); (7) that "based on [the affiant's] review of law enforcement databases, [the affiant] learned that Car-1 . . . was registered to Burgos," *id.*; and (8) that "law enforcement has surveilled Burgos driving Car-1" in the area where the undercover drug buys from Rojas and Ramos had occurred, *id*. The magistrate judge issued an arrest warrant for, *inter alia*, Burgos based on the allegations in the Complaint. *See* Arrest Warrant, Dkt. 2.

---

[4]   Odalys Rojas was also charged in the original indictment, *see* Indictment, Dkt. 20, and he has also pled guilty, *see* Dkt. 65.

On February 6, 2020, law enforcement executed the arrest warrant and arrested Burgos in his apartment. *See* Mem. of Law at 5. In a sworn affidavit submitted after the arrest in support of an application for a search warrant for the apartment, Det. Arroyo reported that, during the arrest, law enforcement forced entry into a locked room as part of a protective sweep and that drug distribution paraphernalia, including a plate with drug residue, small baggies with white powder, and empty small baggies, were observed in plain view in the room. *See* Affidavit, Dkt. 89-1 at A28 ¶ 6(e). Additionally, Det. Arroyo reported that when Burgos was searched incident to his arrest, law enforcement recovered "two plastic bags containing approximately 20 small bags of what appeared to be crack cocaine" from his pants pocket. *Id.* at A28–29 ¶ 6(f).

On the basis of that information, the magistrate judge issued a search warrant for Burgos' apartment. *See* Search & Seizure Warrant, Dkt. 152-1. The Government reports that law enforcement seized "approximately eight large and 27 small plastic bags of marijuana, approximately one small bag of cocaine, a scale with cocaine residue, approximately $995 in United States currency, and two cellphones that were recovered from the bed and dresser in Burgos's bedroom." Resp., Dkt. 95 at 3.

**II.   Burgos' Motion to Suppress**

On May 13, 2020, three months after Burgos was arrested, the Government informed Defense counsel that the Complaint "contains a certain inaccuracy." Letter, Dkt. 89-1 at A50. The Government stated:

> Specifically, the Complaint states in paragraph 7(f) that "Car-1" was registered to Burgos. Car-1 does not in fact appear to be registered to Burgos. Law enforcement did not record Car-1's license plate number and is not presently aware of to whom Car-1 is registered; however, there do not appear to be any white cars registered to Burgos in law enforcement databases.

3

*Id.* The letter did not provide any details about how the inaccurate information came to be included in the Complaint.

In his motion to suppress, Burgos argues that when the false information in paragraph 7(f) is excluded, the Complaint does not support a finding of probable cause to arrest Burgos. Mem. of Law at 9–11. Burgos contends that because law enforcement lacked probable cause to arrest him, the evidence discovered during his arrest must be suppressed. *Id.* at 11. Burgos further argues that because the affidavit in support of the application for a search warrant for his apartment relied "on information and evidence allegedly acquired during the illegal arrest, all such evidence, and the fruits thereof, must be suppressed." *Id.* at 12; *see also* Reply, Dkt. 102 at 5–6 (citing *Wong Sun v. United States*, 371 U.S. 471, 485-87 (1963)). Burgos argues, in the alternative, that the Court should order a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), "to determine why a law enforcement agent swore falsely under oath that he had reviewed a law enforcement database and learned that the white car, Car-1, was registered to Burgos." Mem. of Law at 16. The Government opposes the motion to suppress. Resp., Dkt. 95.

## DISCUSSION

The Fourth Amendment prohibits unreasonable searches and seizures and requires warrants to be supported by probable cause. U.S. Const. amend. IV. Burgos' Fourth Amendment rights were not violated by his arrest and even if they had been, the evidence found on Burgos' person and in his apartment would not be suppressed because of the good-faith exception to the exclusionary rule.[5]

**I.      Burgos' Fourth Amendment Rights Were Not Violated**

---

[5] The application of the good-faith exception is enough on its own to deny Burgos' motion to suppress. The finding that Burgos' Fourth Amendment rights were not violated only serves to reaffirm the Court's denial of the motion. *Cf. United States v. Falso*, 544 F.3d 110, 113 n.2 (2d Cir. 2008) ("Sometimes we have eschewed analyzing probable cause when we rely on the good faith exception, but here we elect to decide both issues." (internal citations omitted)).

In *Franks v. Delaware*, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the . . . warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155–56.  Although the Court granted Burgos' request for a *Franks* hearing, the Court concludes, based on the credible testimony of Det. Arroyo, that the false statement in the Complaint was not made knowingly and intentionally or with reckless disregard for the truth.

### A.  Burgos Made the Required Preliminary Showing to Warrant a *Franks* Hearing

There is no dispute that a false statement was included in the Complaint.  In paragraph 7(f) of the Complaint, Det. Arroyo stated: "Based on my review of law enforcement databases, I have learned that Car-1 (*i.e.*, the car from which RAMOS retrieved the cocaine he sold to UC-3 [on September 13, 2019]) was registered to BURGOS . . . ."  Compl. ¶ 7(f).  The second sentence of the paragraph stated that Car-1 was white.  *Id.*  But the Government has acknowledged that law enforcement did not record Car-1's license plate number and that no white car is registered to Burgos.  Letter, Dkt. 89-1 at A50.  Without a license plate number, Det. Arroyo could not have run the plate through law enforcement databases or otherwise determined to whom the white car was registered.

On January 21, 2021, the Court held oral argument on Burgos' motion to suppress.  Oral Arg. Hearing, Dkt. 149.  At oral argument, the Court concluded that it was "unclear whether [the factual misstatement] was gilding the lily or whether Detective Arroyo thought this was really necessary to get him to probable cause, because it is a really good fact, if it were a fact."  *Id.* at

5

14–15.  Without a readily apparent logical explanation for how the inaccurate statement ended up in the Complaint, Burgos showed — preliminarily — that the false statement was included in the Complaint either knowingly and intentionally or with reckless disregard for the truth.

But that showing is insufficient on its own to warrant a *Franks* hearing.  A hearing may only be granted "if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 at 156.  To assess whether the false statement is material, courts are required to "disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant."  *See United States v. Trzaska*, 111 F.3d 1019, 1027–28 (2d Cir. 1997) (discussing *Franks*, 438 U.S. at 171–72).

Without the inaccurate statement in paragraph 7(f), the Complaint does not support a finding of probable cause, but it is a very close question.[6]  The remaining paragraphs that reference Burgos — paragraphs 7(a), 7(b), 7(c), and the portions of 7(f) that are accurate — do not establish probable cause to arrest Burgos.  *See* Oral Arg. Tr. at 7–15.  As found at the hearing, many of the statements in those paragraphs are conclusory and the underlying bases for those conclusory statements is not disclosed.  *Id.* at 7–8.  In particular, the Complaint did not adequately connect the person referred to as "John John" to Jonathan Burgos, which seriously undermined the conclusion that the facts in paragraphs 7(a), 7(b), and 7(c) supported a finding of probable cause to arrest Burgos.[7]  *Id.* at 9–13.

---

[6]  At oral argument, the Court informed the Government that it would have another chance at the *Franks* hearing to persuade the Court that the false statement in paragraph 7(f) of the Complaint was not material to the finding of probable cause.  Oral Arg. Tr. at 18–19.  But at the *Franks* hearing itself, the Government made no arguments on the question of materiality.  *See generally Franks* Hearing Tr., Dkt. 125.

[7]  The Court noted that the Government could have connected "John John" to Jonathan Burgos by explaining that "John John" and Jonathan Burgos had the same cell phone number and by referencing the affidavit supporting the warrant application for historical cellphone location information, which had detailed that Jonathan Burgos' cellphone number had been saved in the overdose victim's phone under the name Jon Boy.  *See* Oral Arg. Tr. 12–13 (discussing Affidavit, Dkt. 89-1 at A3–10).  At the hearing, the Government acknowledged that the cell search warrant was not incorporated by reference into the Complaint.  *Id.* at 13.

Paragraph 7(b) asserts that between May 1, 2019 and September 19, 2019, law enforcement made multiple undercover buys of cocaine, during which Rojas (the seller to the undercover officers) "frequently referenced, spoke with, or met with Burgos." Compl. ¶ 7(b). But this statement is conclusory; it provides no particulars of Rojas's involvement with or statements regarding Burgos. And with respect to the undercover buy on May 29, 2019, as to which the Complaint states that Rojas and Burgos "were observed and heard engaging in drug-related conversations," *see* Compl. ¶ 7(b), the facts are too vague regarding the substance of the conversations between Rojas and Burgos to conclude that those conversations were inculpatory as to Burgos[8] and are silent on whether those conversations were overheard by law enforcement or whether the assertions in the affidavit were based on a report from an informant or from Rojas. *See* Oral Arg. Tr. at 11. Paragraph 7(b) further states that Rojas provided UC-1 with a cellphone number for Burgos. Compl. ¶ 7(b). But the Complaint does not state that the cellphone number provided by Rojas to the undercover officer matched any number known to be used by Burgos nor does it disclose why Rojas provided the number to the undercover officer. And as to the remaining portion of paragraph 7(f), that "law enforcement has surveilled BURGOS driving Car-1 in the vicinity of the Complex" where the undercover buys had occurred, the statement does not adequately specify who had surveilled Burgos, whether it was the team that was investigating this case or law enforcement more generally, and whether there was any temporal connection between Burgos driving Car-1 in the area and the undercover purchases. *See* Oral Arg. Tr. at 14. Given the lack of detail and the many conclusory statements in the Complaint, when the false statement in paragraph 7(f) is excluded, the warrant does not make out probable cause to arrest Burgos.

---

[8] For all that appears in the Complaint, the overheard conversation on May 29, 2019, could have been Rojas asking Burgos for drugs and Burgos telling Rojas that he was no longer selling drugs. That would qualify as a "drug related conversation" but would not be particularly inculpatory as to Burgos.

Because the warrant application contained a false statement and the false statement was material to a finding of probable cause, the Court granted Defendant's request for a *Franks* hearing.  *See* Oral Arg. Tr. at 18 ("I think we have to have a hearing."); Order, Dkt. 113 (granting Burgos' motion for a *Franks* hearing for the reasons stated at oral argument).

### B. Det. Arroyo Did Not Make the False Statement Knowingly and Intentionally or with Reckless Disregard for the Truth

The Court held the *Franks* hearing on May 6, 2021.  *See generally Franks* Hearing Tr., Dkt. 125.  The purpose of the hearing was to determine whether Burgos could establish by a preponderance of the evidence that the false statement was made knowingly and intentionally or with reckless disregard for the truth.  *See Franks*, 438 U.S. at 155–56.  If a defendant can establish that, then "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  *Id.* at 156.

In the *Franks* context, whether an affiant "acted deliberately or recklessly is a factual question of intent . . . ."  *See Trzaska*, 111 F.3d at 1028; *see also United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013) ("Whether an individual had a particular mental state is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." (cleaned up)); Oral Arg. Tr. at 19 (noting that the *Franks* hearing "is going to rest entirely on credibility").  Proof that the affiant was negligent or made an innocent mistake is insufficient to invalidate a warrant.  *Franks*, 438 U.S. at 171; *see also United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996) (finding that the required intent was not shown because there was no evidence of "deliberate prevarication").

#### 1. Burgos Did Not Show that Det. Arroyo Knowingly and Intentionally Made the False Statement

Burgos did not demonstrate by a preponderance of the evidence that Det. Arroyo knowingly and intentionally made a false statement.  Having carefully considered Det. Arroyo's

8

testimony at the *Franks* hearing, the Court is persuaded that law enforcement had overwhelming evidence to support a finding of probable cause to arrest Burgos, even though some of that evidence did not find its way into the Complaint or was not expressed as clearly as it could have been. Based on the evidence adduced at the *Franks* hearing, it is not reasonable to infer that Det. Arroyo would have intentionally put false information into the warrant application because law enforcement had evidence (a) that was at least as persuasive as the assertion that Car-1 was registered to Burgos and (b) that connected Burgos to the cocaine sold during the controlled drug buy at issue in the problematic paragraph. *See Franks* Hearing Tr. at 46. With more than sufficient evidence to support a showing of probable cause, Det. Arroyo had no reason to intentionally misstate the facts in order to obtain an arrest warrant. Although the Complaint reflects sloppy drafting, there is no indication that Det. Arroyo was knowingly and intentionally misstating the facts.

Det. Arroyo credibly testified that he observed Burgos play a significant role in the controlled drug buy on September 13, 2019, that was at issue in paragraph 7(f) of the Complaint.[9] Det. Arroyo testified that he was the "ghost"[10] during that controlled buy. *Id.* at 17–19. As the "ghost," Det. Arroyo observed the undercover officer speak with Ramos and give him money. *Id.* at 18. He then observed Ramos walk over to a white work van that Det. Arroyo had seen Burgos drive in the past, speak with a male that had been working on the van, and carry

---

[9] Paragraph 7(f) of the Complaint states in full: "On or about September 13, 2019, UC- 3 met with RAMOS in the vicinity of the Complex to purchase narcotics. During the meeting, RAMOS identified a white car ("Car- 1") from which RAMOS stated he was going to retrieve the narcotics. RAMOS then left UC-3 and returned with approximately five glassine envelopes, which RAMOS sold to UC-3. The contents of the glassine envelopes later tested positive for the presence of cocaine. Based on my review of law enforcement databases, I have learned that Car- 1 (*i.e.*, the car from which RAMOS retrieved the cocaine he sold to UC- 3) was registered to BURGOS, and that law enforcement has surveilled BURGOS driving Car-1 in the vicinity of the Complex." Compl., Dkt. 1 ¶ 7(f).

[10] A "ghost" is an undercover police officer who provides back up to the undercover officer who is making an undercover purchase of narcotics. *Franks* Hearing Tr. at 17.

out "some sort of hand exchange." *Id.* at 13, 18. Ramos then returned to the undercover officer and gave him drugs. *Id.* at 18–19. Following the controlled buy, Det. Arroyo conducted a "walk-by" to identify the individual to whom Ramos had spoken next to the white work van. *Id.* at 19. Det. Arroyo identified the person as Jonathan Burgos. *Id.*

Det. Arroyo's recollection of the September 13, 2019, buy was corroborated by the N.Y.P.D. buy report that was prepared the day after the purchase by the undercover officer who made the buy. *See* Buy Report, Def. Ex. 5 (admitted into evidence). The report mentions a "white van" under the section titled "event details." *Id.* The undercover officer noted that Ramos "identifie[d] a white vehicle in which he is going to purchase the narcotics from." *Id.* Although the buy report does not mention Det. Arroyo's role as a ghost, it does corroborate Det. Arroyo's recollection of Burgos' involvement in the transaction.

With overwhelming evidence to support probable cause, Det. Arroyo lacked any reason to have intentionally and knowingly misstated facts in the Complaint. In *United States v. Lambus*, the Second Circuit considered a federal agent's erroneous statement in an affidavit in support of a wiretap application. 897 F.3d 368, 381 (2d Cir. 2018). The agent stated in his affidavit that "a check of federal law enforcement databases . . . indicate[s] that there have been no prior applications seeking Court authorization to intercept the wire, oral, or electronic communications of the Target Subjects or over the subject telephone." *Id.* (cleaned up). There was no dispute that statement was false as there had been several applications leading to orders authorizing interception of communications of some of the target subjects. *Id.* at 381–82. The agent explained that he had "misunderstood what [he] was saying" in the statement because he had checked the databases for the targets he "expected to actually intercept on that phone," not for all the named target subjects. *Id.* at 382. The Second Circuit noted that if the agent had included in the affidavit that prior court orders had authorized wiretaps of some of the targets,

10

that fact would likely have strengthened the application's showing of probable cause. *Id.* 399. The Second Circuit held that there was no evidence that the agent's false statement was made knowingly and intentionally, in part because "[t]here was no suggestion as to any possible motive for the [agent] to commit the errors, nor any evidence that the errors were designed to mislead the authorizing judge." *Id.* at 400.[11]

Here, there were more than sufficient facts to establish probable cause for the arrest of Burgos, and Defendant has not suggested any possible motive for Det. Arroyo to have knowingly and intentionally misstated facts in the Complaint. Had Det. Arroyo included all of the facts to which he credibly testified at the *Franks* hearing regarding the white work van — that an informant had told him that Burgos operated a white van, that he had personally observed Burgos driving the white van, that he saw Ramos do some sort of hand exchange with Burgos next to the white van as part of a controlled buy — those facts "would only have strengthened, not weakened, the application's proffer as to probable cause." *Lambus*, 897 F.3d at 400–01. In short, based on Det. Arroyo's credible testimony, the Court finds that he did not include the false statement intentionally and knowingly.

With more than enough facts to establish probable cause to arrest Burgos,[12] the Court finds that the false statement in the Complaint was more likely than not[13] the product of sloppy drafting rather than an intentional and knowing misstatement by Det. Arroyo.

---

[11]   *Cf. United States v. Rajaratnam*, 719 F.3d 139, 155 n.18 (2d Cir. 2013) ("Indeed, it is difficult to imagine a situation where the government would intentionally or 'with reckless disregard' omit information that would strengthen its 'probable cause' . . . showing.").

[12]   In addition to the facts discussed in text, Det. Arroyo also credibly testified that the decedent's mother had informed him that the cellphone number saved in the decedent's phone as "Jon Boy" belonged to Burgos, *see Franks* Hearing Tr., Dkt. 125 at 7–8, and that Ramos had told him that the first thing he did when he encountered the unconscious victims was to call Burgos, who came to the apartment and emptied money and drugs from a safe, *id.* at 9.

[13]   Defendant's burden of proof at a *Franks* hearing is preponderance of the evidence. *Franks v. Delaware*, 438 U.S. 154, 156 (1978).

11

### 2. Burgos Did Not Show that Det. Arroyo Made the False Statement with Reckless Disregard for the Truth

The remaining question is whether Det. Arroyo's "sloppy drafting" rises to the level of "reckless disregard for the truth." The Court finds that it does not.

The Complaint stated that based on Det. Arroyo's review of law enforcement databases, the white car from which Ramos retrieved the drugs was registered to Burgos. Compl. ¶ 7(f). The underlying point of the statement is objectively accurate — Burgos was associated with the vehicle from which the drugs were obtained. Moreover, Det. Arroyo did review law enforcement databases with respect to other vehicles that Burgos was known to drive, including one that was white.[14] *See Franks* Hearing Tr. at 15–16 (noting that he ran the license plates for a gray Nissan and a white box truck); N.Y.P.D. Report, Gov. Ex. 9 (admitted into evidence) (noting in a December 2019 report that Det. Arroyo had run registration checks on the box truck and the Nissan, which were both registered to Burgos' girlfriend, Rachel Ocasio). Det. Arroyo credibly testified that he observed Burgos driving the white work van at issue, *see Franks* Hearing Tr. at 13, 14, 19, and that a confidential informant had told him that Burgos was the owner of the white van, *id.* at 24–25.

Det. Arroyo signed the Complaint more than four months after the controlled buy described in paragraph 7(f). *Compare* Compl. at p. 5 (signed February 3, 2020) *with id.* ¶ 7(f) (stating that the controlled buy occurred on September 19, 2019). Based on Det. Arroyo's credible testimony and his lack of motive to lie, it appears that he did not review the Complaint as carefully as he should have and failed to exercise due care by double-checking each fact in the Complaint against information in the case file. In *Lambus*, the Second Circuit case discussed above, the Court similarly concluded that the agent's conduct was likely careless. *See Lambus*,

---

[14] Det. Arroyo credibly testified that of the five vehicles associated with Burgos, three were white. *Franks* Hearing Tr. at 12–13, 20–21.

897 F.3d at 401 ("But on this record, lacking any hint of a motive to [make a false statement], these observations are more consistent with carelessness and negligence than with knowing or deliberate falsehoods, reckless disregard, or perjury."). Although law enforcement should always exercise due care, particularly with respect to a document as important as a criminal complaint, the Court cannot conclude that Det. Arroyo's actions were reckless.

In short, because Burgos has not shown that Det. Arroyo's false statement was made knowingly and intentionally or with a reckless disregard for the truth, he has not shown that his Fourth Amendment rights have been violated. Accordingly, Burgos' motion to suppress the fruits of the arrest warrant is denied.[15]

## II. The Good-Faith Exception Further Justifies Denying the Motion to Suppress

The fact that Det. Arroyo acted in good faith is another reason to deny Burgos' motion to suppress. "As both the Supreme Court and Second Circuit have held, a violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule." *United States v. Kim*, No. 16-CR-191, 2017 WL 5256753, at *3 (E.D.N.Y. Nov. 10, 2017) (citing *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010); *Herring v. United States*, 555 U.S. 135, 138 (2009)); *see also United States v. Leon*, 468 U.S. 897, 906 (1984) ("Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is an issue

---

[15]  Because the motion to suppress the arrest warrant is denied, there is no basis to suppress the fruits of the search warrant for Burgos' apartment. There was more than sufficient evidence to support the magistrate judge's determination that probable cause existed to believe narcotics and narcotics paraphernalia would be found in Burgos' apartment, given that Burgos had drugs on his person packaged for resale and drugs and drug paraphernalia were in plain view in the apartment. *See* Affidavit, Dkt. 89-1 at A28–29 ¶¶ 6(e), 6(f). Burgos acknowledges this reality; one of his two arguments in favor of suppressing the evidence obtained as a result of the search warrant for his apartment is that the search warrant was based on what he contends were the fruits of an illegal arrest. *See* Mem. of Law at 12, 14. His only other argument is that the premises search warrant "does not allege sufficient probable cause to search any electronic devices seized." *Id.* at 12; *see also id.* 12–14. For the reasons discussed in Section III of this opinion, the Court finds that argument unpersuasive.

separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." (internal citation omitted)).

Because the exclusionary rule exacts a heavy toll on the justice system, it generally does not apply when suppression would provide only marginal deterrence to misconduct by law enforcement. *United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015) (quoting *Herring*, 555 U.S. at 141). "The rule's corrective value justifies its cost when the police 'exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" *Id.* at 117–18 (quoting *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013)). With those remedial purposes in mind, the good-faith exception asks "whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (cleaned up).[16] When a reasonably well-trained officer would have known the actions taken pursuant to the warrant were illegal, exclusion is appropriate because the intended deterrent effect outweighs the toll on the justice system. *Raymonda*, 780 F.3d at 117.

The Supreme Court has held that the good-faith exception does not apply in at least four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *Leon*, 468 U.S. at 923). "In such circumstances, reliance on the legal judgment of the issuing judge would not be objectively reasonable." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (citing *Leon*, 468 U.S. at 923).

---

[16] The good-faith exception applies equally in the search and arrest warrant contexts. *See Herring v. United States*, 555 U.S. 135, 140–47 (2009) (discussing the good-faith exception with respect to both search and arrest warrants); 1 Wright & Miller, Fed. Prac. & Proc. Crim. § 52 (4th ed. 2021) (noting that "since the same constitutional principle applies to searches and arrests," the good-faith exception applies to both).

Burgos contends that the first, third, and fourth circumstances apply to the arrest warrant in this case, and, therefore, the good-faith exception does not rescue from suppression evidence that was the fruit of the allegedly illegal arrest. The Court disagrees. With respect to the first circumstance, courts consider whether the issuing magistrate judge has been knowingly misled pursuant to the same *Franks* standard already discussed. *See Leon*, 468 U.S. at 923 ("Suppression . . . remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." (citing *Franks*, 438 U.S. at 155–56)); *see also Falso*, 544 F3d at 1228 (applying the *Franks* standard to the knowingly misled exception).[17] For the same reasons that the Court found that the false statement in the Complaint was not made knowingly and intentionally or with reckless disregard for the truth, the Court holds that the magistrate judge was not knowingly misled.

Burgos' claim that the Complaint is so lacking in indicia of probable cause as to make reliance on it unreasonable fares no better. Here, the Court ultimately found that without the inaccurate statement in paragraph 7(f), the Complaint did not support a finding of probable cause. But there is no doubt that it was a close question. Finding that an affidavit is so lacking in indicia of probable cause that reliance on it is not reasonable is a "very difficult threshold to meet." *Falso*, 544 F.3d at 128 n.24 (collecting Second Circuit cases rejecting objections to the good-faith exception on this basis). Where reasonable minds can differ as to the existence of probable cause, the underlying document is not so lacking in indicia of probable cause as to

---

[17] Burgos recognizes that determining whether a magistrate judge was knowingly misled requires assessing whether the *Franks* standard has been met. *See* Reply, Dkt. 102 at 8 (arguing that a *Franks* hearing is needed to determine whether the magistrate judge was knowingly misled).

make reliance on it unreasonable. *Id.* at 128–29. Accordingly, Burgos has not shown that law enforcement should be denied the benefit of the good-faith exception on this basis.

Neither the arrest warrant nor the search warrant in this case was facially deficient. The Supreme Court has indicated "that a warrant is facially defective when it omits or misstates information specifically required to be contained therein, *i.e.*, the place to be searched, and the persons or things to be seized." *United States v. Clark*, 638 F.3d 89, 102 (2d Cir. 2011) (citing *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984); *Groh v. Ramirez*, 540 U.S. 551, 564 (2004)).[18] In this matter, the arrest warrant clearly stated that Jonathan Burgos was the person to be arrested. *See* Arrest Warrant, Dkt. 2. And the search warrant incorporated by reference from the application for the search warrant a description of the subject premises to be searched, *see* Search & Seizure Warrant, Dkt. 152-1 at 3–4, and the detailed list of the items to be seized, *id.* at 5–6. Accordingly, the warrants were not facially deficient.

Because none of the four circumstances that make the good-faith exception unavailable is present in this case, the Court must consider "whether a reasonably well-trained officer would have known that the search was illegal in light of all of the circumstances." *Herring*, 555 U.S. at 145 (cleaned up). "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, we can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014); *see also United States v. Williams*, No. 17-CR-78, 2019 WL 4454250, at *10 (W.D.N.Y. Apr. 25, 2019), *report and*

---

[18] Defendant argues that the warrants are facially deficient because they are "utterly devoid of any allegations that could support a finding of probable cause." Reply at 9. But that argument confuses a warrant that is "facially deficient" with one that is "lacking in indicia of probable cause." It is only the latter that considers whether the warrant supports a finding of probable cause; facially deficient goes to whether the Fourth Amendment's particularity requirement was met.

*recommendation adopted*, No. 17-CR-78, 2019 WL 3074058 (W.D.N.Y. July 15, 2019) (collecting cases with similar holdings).[19]

Here, as outlined above, Det. Arroyo credibly testified that he was aware of a number of facts not included in the Complaint that connected Burgos to the alleged drug conspiracy. Those facts more than establish the existence of probable cause to arrest Burgos. Accordingly, even if the arrest warrant had been illegal (which it was not), Det. Arroyo acted in good faith given the considerable amount of existing evidence that inculpated Burgos.

In short, Burgos has not shown that the good-faith exception does not apply in this case. Even if the Court had concluded that Burgos' Fourth Amendment rights were violated, the good-faith exception would preclude suppression of the evidence seized incident to Burgos' arrest and pursuant to the search warrant.

### III. Burgos' Remaining Arguments about the Search Warrant Are Unpersuasive

Burgos also argues that the search warrant lacked "sufficient probable cause to search any electronic devices seized." Mem. of Law at 12. The Court disagrees. For this argument, Burgos is not alleging that the search warrant itself contains any false statements. Accordingly, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form *of de novo* review [and a] magistrate's determination of probable cause should be paid great deference by reviewing courts." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (cleaned up). Moreover, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. There is

---

[19] C*f. United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) ("While we may no longer rely on unincorporated, unattached supporting documents to cure a constitutionally defective warrant, those documents are still relevant to our determination of whether the officers acted in good faith, because they contribute to our assessment of the officers' conduct in a particular case.").

no basis to disturb the magistrate judge's finding that the application for the search warrant contained sufficient information to support a finding of probable cause to search electronic devices found in Burgos' apartment.

The affidavit in support of the search warrant contains more than adequate facts to support a conclusion that there was probable cause to believe that Burgos is a drug dealer. Because the arrest warrant stands, the evidence obtained in plain view and as part of the search incident to his arrest can be considered. Law enforcement found two plastic bags containing approximately 20 small bags of what appeared to be crack cocaine in Burgos' pants pocket, s*ee* Affidavit, Dkt. 89-1 at A28–29 ¶ 6(f), and drug distribution paraphernalia, including a plate with drug residue, small baggies with white powder, and empty small baggies, were in plain view in a room that law enforcement entered as part of a protective sweep. *Id.* at A28 ¶ 6(e). The magistrate judge correctly considered that evidence when determining whether there was probable cause to search Burgos' residence.

The affidavit was also more than adequate to establish probable cause to believe evidence of the drug conspiracy was likely to be found on electronic devices located in Burgos' apartment. In paragraph 10 of the affidavit in support of the application for the search warrant, Det. Arroyo stated:

> Based on my participation in this investigation, including my review of documents and my conversations with law enforcement official[s] and review of reports and other documents, I know that Burgos used multiple cellphones during the course of this investigation in furtherance of the Subject Offenses, including to communicate with co-conspirators regarding the Subject Offenses.

Affidavit, Dkt. 89-1 at A32 ¶ 10. Det. Arroyo also explained that "individuals who engage in narcotics trafficking" often use cellphones or other electronic devices to maintain the contact information of their co-conspirators and to communicate with them. *Id.* ¶¶ 8(g), 9. Given such

facts, the Court finds no error in the magistrate judge's conclusion that probable cause existed for the search and seizure of electronic devices found in Burgos' apartment.

In short, to the extent Burgos moves to suppress evidence obtained from Burgos' electronic devices based on a lack of probable cause to support the search warrant, that motion is denied.

## CONCLUSION

For the reasons discussed above, Burgos' motion to suppress is DENIED.

The Clerk of Court is respectfully directed to close the open motion at docket entry 89.

**SO ORDERED.**

Date: **August 25, 2021**
**New York, NY**

**VALERIE CAPRONI**
**United States District Judge**