# RUHNKE & BARRETT
ATTORNEYS AT LAW

47 PARK STREET  
MONTCLAIR, N.J. 07042  
973-744-1000  
973-746-1490 (FAX)

29 BROADWAY  
SUITE 1412  
NEW YORK, N.Y.  10006  
212-608-7949

DAVID A. RUHNKE (davidruhnke@ruhnkeandbarrett.com)   ◊   JEAN D. BARRETT (jeanbarrett@ruhnkeandbarrett.com)

---

REPLY TO <mark>MONTCLAIR</mark> OFFICE

SUPPLEMENTAL SENTENCING SUBMISSION  
(Memorandum Served and Filed via ECF; Attachment Sealed)

December 5, 2021

Via E-mail to Chambers: CaproniNYSDChambers@nysd.uscourts.gov  
(With Sealed Appendix Not Filed Via ECF)

Hon. Valerie E. Caproni, U.S.D.J.  
Thurgood Marshal United States Courthouse  
40 Foley Square  
New York, N.Y. 10007

Re:   *United States v. Jonathan Burgos*, 20-cr-00182 (VEC)

Dear Judge Caproni:

Mr. Burgos is scheduled for sentencing before Your Honor on December 7 at 2:00pm. This supplemental sentencing submission addresses two issues raised by the Government in its sentencing submission of November 16, 2021. (As Your Honor may recall, I had agreed not to review the Government's submission in advance of my own as one aspect of the Government's consent to my request for additional time to file my sentencing submission.)

The issues raised by the Government are: (1) a potential violation of Mr. Burgos' conditions of release involving unauthorized travel to the District of Connecticut; and (2), whether Mr. Burgos has an ownership interest in a property in Connecticut, where, as noted in the PSR, he intends to reside when released. (PSR at ¶ 80, p. 19.) The property is described in the PSR as "owned by Ms. Ocasio," Mr. Burgos's fiancée. She has written the Court.

1. <u>Violation of release conditions</u>.

Appended to the Government's sentence memo are voluminous telephone records suggesting that Mr. Burgos─despite having travel restricted to the

**RUHNKE & BARRETT**
**ATTORNEYS-AT-LAW**

HON. VALERIE E. CAPRONI, U.S.D.J.
DECEMBER 5, 2021
PAGE 2

Southern and Eastern Districts of New York—was spending time in Waterbury, Connecticut at his fiancee's residence. The Government argues Mr. Burgos was in violation of his conditions of release. (US Memorandum at p. 8.) As the following discussion will show, however, this situation is based on a simple misunderstanding on Mr. Burgos' part concerning restrictions on his travel. As an initial observation, the very purpose of establishing release conditions is to assure the defendant's presence in court when required. It is undisputed that Mr. Burgos honored every court appearance up to and including his trial.

Mr. Burgos was arrested on the current charges on February 6, 2020 and initially detained on consent pending an effort to set suitable conditions of release. (ECF-4.) On February 11, 2020, he was released on conditions that included home detention, electronic monitoring, and the travel restrictions described above. (ECF-16.) On May 8, 2020, Your Honor granted a motion, with the Government's consent, to remove the conditions of home confinement and location monitoring. (ECF-40.) As noted in that endorsed motion, Pretrial Services no longer considered the conditions necessary.

In discussing this issue with Mr. Burgos in the context of the Government's sentence memorandum, it appears to be a case, as noted above, of an honest misunderstanding on his part. In Mr. Burgos' mind, once the home detention and location monitoring conditions were removed, he was free to travel to Connecticut to see his fiancée and the children who view Mr. Burgos as their father.[1] Waterbury, Connecticut is approximately 30 miles from the northeastern borders of the Southern District of New York.

I also discussed this issue earlier this week with Mr. Burgos' Pretrial Services Officer, Dayshawn Bostic. Officer Bostic advised me that Mr. Burgos never sought permission to travel to Connecticut. He also advised me, however, that had permission been sought, Pretrial Services would not have had a problem with it and that had a motion been brought to enlarge Mr. Burgos' travel restrictions to include the adjacent District of Connecticut, Pretrial would not have objected. Without speaking for the Government, I doubt the Government would have objected so long as Pretrial was on board. Mr. Bostic

---

[1] It is noted that in the PSR (and in her letter to the Court), Ms. Ocasio describes Mr. Burgos as "a father figure to her children whose fathers have not been involved in their lives." (PSR at ¶78, p. 18.)

further informed me that Mr. Burgos was in apparent compliance with all other release conditions.

In sum and substance, this is a case (if the Court will forgive the sports metaphor) of "no-harm, no-foul." The reality is that Mr. Burgos appeared in court whenever he was required to, the very goal of imposing release conditions in the first place. He regrets, and apologizes for, his mistaken impression that there was no bar on his travel to an adjoining district to be with his fiancée and the children who regard him as their only real father.

2. <u>The Connecticut Property</u>.

In its sentence memorandum, the Government raises the issue of whether, and to what extent, Mr. Burgos has an ownership interest in the Waterbury, Connecticut property, pictured below, center. (US Memorandum at p. 8.) Submitted herewith to Your Honor and the Government (under seal since they are rife with signatures, bank account numbers and other protected information) are the closing documents for the property (hereinafter "SA").



I have discussed this issue with the people immediately involved, including the paralegal member of the closing attorney's staff who oversaw the closing

**RUHNKE & BARRETT**  
**ATTORNEYS-AT-LAW**

HON. VALERIE E. CAPRONI, U.S.D.J.
DECEMBER 5, 2021
PAGE 4

documents, the necessary payments, and the actual closing.

This property was purchased by Rachel Ocasio on May 16, 2019 for $95,000. (SA-7.) The source of the cash was the lifetime savings of Ms. Ocasio and her mother, Sylvia Brankers. (Ms. Brankers has also written an earlier letter to the Court.) Ms. Ocasio was the source of the $40,000 check at SA-10; Ms. Brankers was the source of the second check at SA-10. Each advises that Mr. Burgos contributed no funds to this transaction.

Approximately three weeks after the closing, in her capacity as owner of the property solely in her name in fee simple (SA-4), Ms. Ocasio issued a Quit Claim Deed to Mr. Burgos so that the property was (and remains) co-owned by Ms. Ocasio and Mr. Burgos as tenants in common. (SA-11.) Based on conversations with the parties, including Ms. Ocasio and Ms. Brankers, this can best be described as an ill-advised gesture on Ms. Ocasio's part to demonstrate her love for and commitment to the man she plans to marry. Whatever the ins and outs of property law are, neither Ms. Ocasio nor Mr. Burgos regard this property as anything but Ms. Ocasio's since the funding all came from her and her mother. It is my understanding that steps are being taken through Ms. Ocasio's real estate attorney to reverse this transaction.

3. <u>Conclusion</u>.

The Court's time and attention to this supplemental submission are appreciated. On December 7, I will reiterate my position that Mr. Burgos should be sentenced to time-served followed by a period of supervised release.

> Respectfully submitted,
> /s/
> David A. Ruhnke
> Counsel to Jonathan Burgos

Cc: via email with sealed appendix (SA) included:

AUSA Micah F. Fergenson
AUSA Samuel P. Rothschild