UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
JONATHAN BURGOS,                                              :
                                                              :
                              Petitioner,                     :      20-CR-00182 (VEC)
                                                              :      23-CV-10087 (VEC)
               -against-                                      :
                                                              :      <u>OPINION & ORDER</u>
UNITED STATES OF AMERICA,                                     :
                                                              :
                              Respondent.                     :
                                                              :
------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

  After a jury trial, Jonathan Burgos was convicted of conspiracy to possess controlled substances and possession with intent to distribute controlled substances.  *See* Judgment, Dkt. 188.[1]  Prior to trial, Burgos made a motion to suppress evidence seized incident to his arrest and pursuant to a search warrant, which this Court denied.  Motion to Suppress, Dkt. 89; Opinion & Order Denying Defendant's Motion to Suppress ("Opinion"), Dkt. 158.  Following trial, Mr. Burgos appealed, and the Court of Appeals affirmed the conviction.  *United States v. Howard*, No. 21-3006, 2023 WL 2980320 (2d Cir. Apr. 18, 2023) (summary order).  On November 15, 2023, Mr. Burgos filed a petition pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel at trial and on appeal.  Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (the "Petition" or "Pet."), Dkt. 206. The Petition is DENIED.

---

[1]  Citations refer to the docket and ECF pagination of the underlying criminal case, *United States v. Burgos*, No. 20-CR-182 (S.D.N.Y. 2021).

1

I.  **Background**

Burgos's arrest and conviction arose from a lengthy investigation that included multiple undercover purchases of cocaine that culminated in Detective Lee Arroyo swearing out a Complaint seeking an arrest warrant for Mr. Burgos. Complaint, Dkt. 1, ¶¶ 5, 7. The Complaint alleged that Mr. Burgos had been involved in multiple drug transactions with undercover N.Y.P.D. officers and that, during one such transaction, drugs were retrieved from a white vehicle. *Id.* Det. Arroyo further stated that he saw Mr. Burgos driving the white vehicle and that, based on his review of law enforcement databases, he knew that the vehicle was registered to Mr. Burgos. *Id.* ¶ 7(f). On the basis of the Complaint, the Magistrate Judge issued a warrant for Mr. Burgos's arrest. Arrest Warrant, Dkt. 2.

Several months later, the Government informed the defense that, contrary to what Det. Arroyo represented in the Complaint, the white vehicle "does not in fact appear to be registered to Burgos." May 13, 2020, Letter to David Ruhnke from Juliana N. Murray ("Letter"), Dkt. 89-1, at 50. The Government further stated: "[l]aw enforcement did not record [the vehicle's] license plate number and is not presently aware of to whom [the vehicle] is registered; however, there do not appear to be any white cars registered to Burgos in law enforcement databases." *Id.*

Prior to trial, Mr. Burgos moved to suppress evidence that the Government obtained incident to his arrest and pursuant to a search warrant,[2] *see* Motion to Suppress, and the Court conducted an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *See Franks* Hearing Transcript ("*Franks* Tr."), Dkt. 125. During the *Franks* hearing, Det. Arroyo explained why the Complaint erroneously represented that the white vehicle was registered to

---

[2]  The facts developed at the time of Burgos's arrest were used to obtain a search warrant for his residence. The theory of the Motion to Suppress was that the arrest warrant was unlawful because of false statements in the Complaint, and the search warrant, which was based on facts gathered during the arrest, was fruit of the poisonous tree. Motion to Suppress at 9–12

Mr. Burgos. Opinion at 9–12. First, he testified that, as he represented in the Complaint, he had reviewed law enforcement databases with respect to other vehicles that Mr. Burgos was known to drive, including one that was white (although those database searches did not actually show that Mr. Burgos owned a white vehicle). *Id.* at 12; *Franks* Tr. at 15–16. Second, he testified that he had personally observed Mr. Burgos driving the vehicle at issue. Opinion at 12; *Franks* Tr. at 13–14, 19. Third, he testified that a confidential informant told him that Mr. Burgos was the owner of the white van and that, upon learning this, he confused "ownership" with "registration." Opinion at 12; *Franks* Tr. at 24–27.

In addition to evidence related to the vehicle's ownership, Det. Arroyo testified that law enforcement possessed other evidence that was not included in the Complaint that linked Mr. Burgos to the white vehicle. Specifically, Det. Arroyo testified that, during a controlled drug buy, he personally observed Mr. Burgos's confederate walk over to the white vehicle, speak with a man, and carry out a hand exchange with him immediately before executing a drug transaction with an undercover officer. Opinion at 9–10; *Franks* Tr. at 13, 18–19. Det. Arroyo later walked by the white vehicle and confirmed that the person with whom the confederate had spoken was Mr. Burgos. Opinion at 10; *Franks* Tr. at 19. Det. Arroyo's recollection was corroborated by the N.Y.P.D. buy report that was prepared the day after the purchase by the undercover officer, which mentions a "white van" under a section titled "event details." Opinion at 10.

On August 25, 2021, this Court denied Mr. Burgos's Motion to Suppress. *See* Opinion. The Court applied the two-part analysis set forth in *Franks*, considering whether the false statement was "necessary to the [Magistrate's] finding of probable cause" and whether it was made "knowingly and intentionally, or with reckless disregard for the truth." *Id.* at 5 (quoting *Franks*, 438 U.S. at 155–56). As to the first inquiry, the Court found that the Complaint's

erroneous assertion regarding the registration of the white vehicle was necessary to find probable cause to issue the arrest warrant, but that it was "a very close question." *Id*. at 6. This finding was ultimately irrelevant, however, because the Court was "persuaded that law enforcement had overwhelming evidence to support a finding of probable cause to arrest [Mr. Burgos], even though some of that evidence did not find its way into the Complaint or was not expressed as clearly as it could have been." *Id.* at 9. The Court concluded that "[a]lthough the Complaint reflects sloppy drafting, there is no indication that Det. Arroyo was knowingly and intentionally misstating the facts," meaning that suppression pursuant to *Franks* was not warranted. *Id*. Further, the Court found that, because Det. Arroyo did not knowingly deceive the Magistrate Judge and the warrant was not so lacking in indicia of probable cause as to render reliance upon it unreasonable, the good-faith exception to the exclusionary rule applied. *Id*. at 13–17.

Mr. Burgos proceeded to trial and was convicted. Judgment at 1. Among other issues, he appealed the denial of his Motion to Suppress; the Court of Appeals affirmed. *Howard*, 2023 WL 2980320.

## DISCUSSION

### II.    Legal Standard

Pursuant to section 2255, a petitioner "may move the court which imposed [his] sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A habeas petitioner can obtain relief under section 2255 from a final judgment "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted); *accord Siri-Reynoso v. United States*, No. 21-CV-11009, 2023 WL 22626, at *3 (S.D.N.Y. Jan. 3, 2023). As a *pro se* petitioner, Mr. Burgos's

submissions "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).

Mr. Burgos raises six claims, all of which rest on an allegation of ineffective assistance of counsel in violation of the Sixth Amendment.  To prevail on such a claim, a petitioner must show (1) that his "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700.

With respect to the first prong of the *Strickland* inquiry, the Court must adopt "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, viewing the actions in light of the law and circumstances confronting counsel at the time." *United States v. Barrett*, 102 F.4th 60, 72 (2d Cir. 2024) (quoting *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012)).  "[S]crutiny of counsel's performance [must] be highly deferential," and the Court must make "every effort . . . to eliminate the distorting effects of hindsight." *Morales v. United States*, 635 F.3d 39, 44 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice under the second prong of *Strickland*, a petitioner must show that, but for the lawyer's errors, "[t]he likelihood of a different result [would have been] substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 693, 696).

### III. Mr. Burgos Has Not Shown that His Trial Counsel Was Ineffective

#### A. Mr. Burgos's Trial Counsel Was Not Ineffective for Failing to Investigate or Raise the Confidential Informant Issue (Claims 1–3)

Mr. Burgos's first three claims of ineffective assistance of counsel turn on the notion that his trial counsel, David Ruhnke, failed to competently investigate and litigate the fact that the Complaint omitted any reference to the confidential informant who told Det. Arroyo that Burgos owned the white vehicle. Pet. at 16–17. According to Mr. Burgos, Mr. Ruhnke should have done at least two things differently. First, he argues that Mr. Ruhnke should have interviewed Det. Arroyo upon receiving notice from the Government that there was a misstatement in the Complaint; had he done so, according to Burgos, he could have affirmatively raised the omission of the confidential informant in the Motion to Suppress. *Id*. at 16. Second, he asserts that, after Det. Arroyo referenced a confidential informant during the *Franks* hearing, Mr. Ruhnke should have either filed a second motion to suppress or moved to continue the *Franks* hearing to allow time to further investigate the credibility and reliability of the informant. *Id*. at 16; Petitioner's Reply to Government's Memorandum in Opposition to § 2255 Petition ("Reply"), Dkt. 227, at 2, 4.

To determine whether Mr. Ruhnke's conduct was reasonable under the first prong of *Strickland*, the Court may "look for legitimate justifications for that conduct, including justifications transparent on the record and justifications offered by counsel." *Greiner v. Wells*, 417 F.3d 305, 320 (2d Cir. 2005). "[W]hen there is 'reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.'" *Id.* at 321 (quoting *Strickland*, 466 U.S. at 691). The duty to investigate does not "compel defense counsel to investigate comprehensively every

6

lead or possible defense or 'to scour the globe on the off-chance something will turn up.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)) (citations omitted).

As an initial matter, it is not entirely clear what Mr. Burgos believes Mr. Ruhnke would have discovered had he interviewed Det. Arroyo either before or after the *Franks* hearing, nor what issues he believes Mr. Ruhnke could have raised with the Court regarding the confidential informant. Interpreting the Petition to raise the strongest arguments it suggests (as the Court must, given Mr. Burgos's *pro se* status), it appears that Mr. Burgos intends to argue that further investigation would have revealed something about Det. Arroyo's motives. He suggests that, if Mr. Ruhnke had interviewed Det. Arroyo or otherwise investigated him, Mr. Ruhnke would have uncovered evidence that Det. Arroyo purposefully misstated the source of information sworn to in the Complaint to "avoid[] having to demonstrate the veracity or reliability of the informant's information." Pet. at 18. Such a revelation, Mr. Burgos contends, would have constituted "persuasive evidence that [Det. Arroyo's] false statement was intended to mislead the magistrate, or at least exhibited a reckless disregard for the truth," and therefore would have led the Court to grant the Motion to Suppress. Pet. at 19–18.

This argument is untenable. First, Mr. Burgos provides no evidence that the confidential informant was unreliable, let alone that Det. Arroyo was so concerned about the informant's unreliability that he deliberately concealed the informant's existence. Second, the outcome of the Motion to Suppress would not have changed even if there were evidence that the confidential informant was unreliable and Mr. Ruhnke had uncovered such evidence. As the Court explained in its Opinion on the Motion to Suppress, the revelation that Det. Arroyo relied on a confidential informant helped, rather than hurt, the Government's case. Opinion at 11. Prior to the *Franks* hearing, it was a mystery why Det. Arroyo swore in the Complaint that law enforcement

7

databases showed that the white vehicle was registered to Mr. Burgos when (a) no white vehicles were registered to Burgos and (b) the police did not have the tag number of the vehicle and so could not have learned of its registration from law enforcement databases. Letter, Dkt. 89-1 at 50; *Franks* Tr. at 20. That vacuum of information made plausible Mr. Burgos's argument that Det. Arroyo fabricated the claim about the vehicle's registration in order to buttress his case for probable cause.

With Det. Arroyo's testimony, an alternative explanation emerged. First, he testified that he had, in fact, reviewed databases with respect to certain vehicles that Mr. Burgos was known to drive, including one that was white. *Id*. at 12. Second, he testified that he received a tip from a confidential informant, who told him that Mr. Burgos was the owner of the white van. *Id.* Third, he testified (as was alleged in the Complaint) that he had personally seen Mr. Burgos driving the white vehicle. *Id.* Taken together, these pieces of evidence supported an inference that the misrepresentation in the Complaint was the result of "sloppy drafting" (*i.e.*, Det. Arroyo misstating or misremembering the source of his information) rather than mendacity. *Id*.

In light of the rest of Det. Arroyo's testimony, the Court found that inference to be not just possible, but plausible. According to Det. Arroyo, not only did a confidential informant tell him that Mr. Burgos owned the white van, but he had personally observed Mr. Burgos playing a significant role in a controlled drug buy conducted in immediate proximity to the van.[3] *Id*. at 9, 12. This evidence, which was not included in the Complaint, showed that the "underlying point of the [mis]statement [in the Complaint was] objectively accurate — Burgos was associated with the vehicle from which the drugs were obtained." *Id.* at 12. More importantly, it undercut Mr. Burgos's argument that Det. Arroyo had purposefully lied about the vehicle's registration in

---

[3]   The latter piece of testimony was further corroborated by the N.Y.P.D. buy report. Opinion at 10.

order to enhance his case for probable cause; "[w]ith overwhelming evidence to support probable cause, Det. Arroyo lacked any reason to have intentionally and knowingly misstated facts in the Complaint." *Id*.  Instead, the most logical explanation for the misstatements about the source of the information and the omission of any reference to the informant in the Complaint is that Det. Arroyo "failed to exercise due care by double-checking each fact in the Complaint against the information in the case file." *Id*.  Such carelessness, although regrettable, does not give rise to a Fourth Amendment violation under *Franks*.  *Id.* at 12–13.

 Given this context, Mr. Ruhnke's decision not to attempt to interview Det. Arroyo or otherwise investigate the confidential informant issue was reasonable.  As he explained in a declaration, Mr. Ruhnke believed, based on nearly fifty years of experience as a criminal defense attorney, that it was unlikely Det. Arroyo would consent to be interviewed by the defense.  Declaration of David A. Ruhnke ("Ruhnke Decl."), Dkt. 221, ¶¶ 2, 7.  Even if he did, Mr. Ruhnke reasonably believed that such an interview "would be fruitless" because Det. Arroyo would merely reiterate his testimony from the *Franks* hearing.  *Id.* ¶ 7.  Mr. Ruhnke gathered — and the Court agrees, for the reasons just described — that any explanation Det. Arroyo might offer would only benefit the Government, not Mr. Burgos.  *Id*.  Because counsel is under no obligation to pursue investigative steps that he has reason to believe would be fruitless, Mr. Ruhnke's failure to attempt to interview Det. Arroyo was not unreasonable under the first prong of *Strickland*.  *See Greiner*, 417 F.3d at 321.

 The first three counts of the Petition fail the prejudice prong of *Strickland* for the same reason.  The prejudice inquiry turns on whether the outcome of the Motion to Suppress would have shifted to favor Mr. Burgos had Mr. Ruhnke taken the steps urged by Burgos and either sought a continuation of the *Franks* hearing or filed a second motion to suppress in light of the

9

revelation that Det. Arroyo relied on a confidential informant.  *See Kurtoses v. United States*, No. 15-CR-19, 2019 WL 5395600, at *12–14 (S.D.N.Y. Oct. 22, 2019) (applying the *Franks* standard to the prejudice inquiry of a petitioner's claim of ineffective assistance of counsel).  The result of the *Franks* hearing would have been the same even if the defense had learned in advance of the informant's role in providing facts that appeared in the Complaint.  Regardless of when the defense learned those facts, there was more than ample evidence to support a finding of probable cause, making it highly unlikely that Det. Arroyo would have knowingly and intentionally misstated facts in, or withheld critical facts from, the Complaint.  There was simply no reason to believe that Det. Arroyo intentionally, rather than sloppily, misrepresented the facts when obtaining the arrest warrant.

      The Petition further fails to satisfy the prejudice prong of *Strickland* because the good faith exception to the exclusionary rule would still have applied even if the defense has stressed during the *Franks* hearing the omission of any mention of the confidential informant in the Complaint.  As outlined in the Court's Opinion on the Motion to Suppress, "evidence obtained by officers in objectively reasonable reliance on a warrant [that is] subsequently invalidated by a reviewing court is not generally subject to exclusion." *United States v. Wey*, 256 F. Supp. 3d 355, 395 (S.D.N.Y. 2017) (quoting *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015)); *see also* Opinion at 13–14.  While the good faith exception generally does not apply when "the issuing magistrate has been knowingly misled" or "the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable," *Raymonda*, 780 F.3d at 118 (quoting *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011)), there is no evidence that the Magistrate Judge in this case was knowingly misled.  And because the Magistrate Judge's finding of probable cause would have been a "close question" even if the erroneous information

10

regarding the vehicle had not been included, the warrant was not so lacking in indicia of probable cause as to make reliance on it unreasonable. Opinion at 15. None of those findings would have been altered had the defense known earlier or argued more vociferously about the omission of information regarding the confidential informant in the Complaint.

### B. Mr. Burgos's Trial Counsel Was Not Ineffective in Advising Mr. Burgos During Plea Negotiations (Claim 4)

Mr. Burgos next claims that Mr. Ruhnke provided ineffective assistance when advising him whether to accept a plea offer or proceed to trial. Pet. at 19–21. According to Petitioner, the proposed plea agreement would have required Mr. Burgos "to waive his rights to appeal the denial of the motion to suppress." *Id* at 20. Mr. Burgos asserts that Mr. Ruhnke told him that this Court's Opinion on the Motion to Suppress "was erroneous because it failed to consider the omission from the [C]omplaint that Detective Arroyo's knowledge of the [vehicle's] ownership came from a [confidential informant]." *Id*. Mr. Burgos claims that Mr. Ruhnke "mistakenly told [him] that he could challenge that error on direct appeal, whereas Second Circuit caselaw held that because Ruhnke failed to assert that ground in the motion to suppress and the request for a *Franks* hearing, he waived it." *Id*. at 20–21 (citing *United States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008)). Mr. Burgos now avers that "[h]ad Ruhnke not advised [him] that he could have challenged, on direct appeal, the Court's failure to consider the omission from the Complaint at the *Franks* hearing, he would have accepted the plea agreement." *Id*. at 21.

Mr. Ruhnke, for his part, challenges Mr. Burgos's account of their discussions. He asserts that, although he answered Mr. Burgos's "general questions about the appealability of the *Franks* decision," he "recall[s] no . . . conversation" in which he discussed which aspects of the decision were and were not appealable. Ruhnke Decl. ¶ 8. Mr. Ruhnke further asserts that he advised Mr. Burgos to accept the plea offer if he could truthfully allocate that he was guilty. *Id*.

11

An ineffective assistance of counsel claim arising out of plea negotiations is evaluated under the *Strickland* test. *See Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009). In assessing claims of ineffectiveness in this context, "evidence of counsel's failure to make conscious, reasonably informed decisions for the benefit of the criminal defendant may at times be sufficient to overcome the presumption of effectiveness." *Greiner*, 417 F.3d at 325. Here, the question of whether Mr. Ruhnke made "conscious, reasonably informed decisions" for Mr. Burgos's benefit turns entirely on what he told Mr. Burgos, and he and Mr. Burgos offer conflicting accounts of what was said. The Court does not need to resolve the factual dispute; even if Mr. Burgos's account is correct, his claim fails as to the prejudice prong.[4]

To satisfy *Strickland's* prejudice prong for a claim of ineffective assistance at the plea negotiation stage, a petitioner "must show that but for the ineffective advice of counsel there is a reasonable probability that . . . [he] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances[ ], that the court would have accepted its terms, and that the conviction or sentence . . . would have been less severe than" what the petitioner actually received. *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). When a petitioner makes claims after the fact about how he would have pled had he received effective assistance of counsel, the court must consider "contemporaneous evidence to substantiate a defendant's expressed preferences" as opposed to "*post hoc* assertions from a defendant." *Lee v. United States*, 582 U.S. 357, 369 (2017).

Here, although Mr. Burgos makes conclusory assertions regarding what he would have done if he had been properly advised on the appealability of the confidential informant issue, he

---

[4]   Additionally, as discussed in this Opinion, had Burgos been able to raise the issue of the confidential information on direct appeal, it is highly unlikely that it would have had any effect on the outcome. *See* Section III.A.

does not provide any "contemporaneous evidence to substantiate" those assertions.  *See id.* at 369.  In contrast, Mr. Ruhnke attests in an affidavit that Mr. Burgos repeatedly told him over the course of his representation that he was "not guilty and want[ed] a trial," and that he "would never accept a felony plea."  Ruhnke Decl. ¶¶ 9, 10.  On reply, Mr. Burgos does not present any competing contemporaneous evidence.  *See* Reply at 8–11.  Thus, Mr. Burgos has not shown a reasonable probability that different advice from Mr. Ruhnke on the appealability of the confidential informant issue would have led him to plead guilty.  To the contrary, there is credible evidence in the record from Mr. Ruhnke that Mr. Burgos would have rejected the plea offer even if he had been advised that he could not appeal the confidential informant issue.

In short, Mr. Burgos has not shown that he was prejudiced by Mr. Ruhnke's allegedly ineffective assistance during plea negotiations.

### IV.     Mr. Burgos's Appellate Counsel Was Not Ineffective (Claim 6)

Finally, Mr. Burgos claims that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel on appeal.  Claims of ineffective assistance of counsel at the appellate stage are also evaluated under *Strickland*.  *Barrett*, 102 F.4th at 71–72.  For the reasons set forth in this Opinion, Mr. Burgos's trial counsel was not ineffective; thus, appellate counsel's failure to raise a claim of ineffective assistance of trial counsel on appeal was neither unreasonable nor prejudicial.  *See Aparicio v. Artuz*, 269 F.3d 78, 99 n.10 (2d Cir. 2001) (because the claim that trial counsel failed to raise "was meritless, Petitioner's trial counsel was not ineffective for failing to raise it" and "Petitioner's appellate counsel was not ineffective for failing to raise the ineffectiveness of trial counsel."); *accord Rahman v. Graham*, No. 16-CV-5318, 2018 WL 9339953, at *15 (S.D.N.Y. Sept. 14, 2018), *report and recommendation adopted*, No. 16-CV-5318, 2019 WL 3802523 (S.D.N.Y. Aug. 13, 2019).

## CONCLUSION

For the foregoing reasons, Mr. Burgos's Petition is DENIED. Because Mr. Burgos has not made a substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C.§ 2253. The Clerk of Court is respectfully directed to close the open motion at Dkt. 206 on the docket for 20-CR-182 and to terminate 23-CV-10087. The Clerk is further directed to mail a copy of this opinion to Jonathan Burgos, Reg. No. 87762-054, at FCI Danbury, 33 1/2 Pembroke Rd., Danbury, CT 06811, and to note the mailing on the docket.

**SO ORDERED.**

**Date:  December 10, 2024**
**     New York, New York**

_____
**            VALERIE CAPRONI**
**United States District Judge**